ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| DAVID EFRÓN<br><br>Apelante<br><br>v.<br><br>AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO<br><br>Apelante | TA2025AP00295 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV01488<br><br>Sobre: Cobro de Dinero |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de noviembre de 2025.

Comparece la parte demandante y apelante, el Sr. David Efrón (señor Efrón), quien solicita la revocación de la *Sentencia* emitida el 9 de julio de 2025, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). En el aludido pronunciamiento, el foro primario desestimó con perjuicio la *Demanda* del compareciente por dejar de exponer una reclamación que justificara la concesión de un remedio, según estatuido en la Regla 10.2 de Procedimiento Civil, *infra.* Justipreció que la reclamación dineraria fue renunciada, toda vez que el señor Efrón no interpuso oportunamente una reconvención compulsoria en el caso BY2020CV04117.[1]

**I**

La presente causa se inició el 25 de febrero de 2025, ocasión en que el señor Efrón instó una *Demanda* sobre cobro de dinero contra la parte demandada y apelada, la Autoridad de Carreteras y Transportación de Puerto Rico (ACT).[2] Alegó que, el 20 de mayo de 2024, en el caso BY2020CV04117, el TPI emitió un dictamen, final y firme, en el que

---

[1] Tomamos conocimiento judicial del expediente electrónico del caso *Autoridad de Carreteras y Transportación de Puerto Rico v. David Efrón*, pleito BY2020CV04117.
[2] Entrada 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

determinó probado el hecho que el demandante pagó un total de $110,000.00 a la ACT, por virtud de un contrato de arrendamiento nulo, intitulado *Permiso de Entrada y Ocupación* (Contrato). La nulidad se debió a que el acuerdo pactado carecía de un término de vigencia fijo. El Contrato, suscrito por los litigantes el 31 de octubre de 2001, había establecido cánones de arrendamiento mensuales ascendentes a $1,050.00, por un predio de 6,878.20 metros cuadrados, ubicado dentro de la finca 14574, sita en el barrio Higuillar de Dorado, con el fin de dedicarlo exclusivamente para estacionamiento y áreas verdes.[3] El demandante adujo en su reclamación civil que la ACT no había restituido la aludida cuantía ni su interés legal, estimado en $109,612.00 con un incremento diario a razón de $16.61.

El 23 de mayo de 2025, la ACT incoó una *Moción de Desestimación*.[4] Sostuvo que, en el pleito BY2020CV04117, el TPI no emitió ningún pronunciamiento condenatorio, con relación a los dineros pagados por concepto de los cánones de arrendamiento, ya que el demandante no presentó una reconvención. Es decir, la ACT planteó que cualquier reclamación que el señor Efrón pudo haber tenido en su contra debió haberla presentado en el pleito anterior, mediante una reconvención compulsoria, de conformidad con el ordenamiento procesal civil. Al no hacerlo, renunció. Por ende, añadió que la *Sentencia* allí dictada constituía cosa juzgada, en su modalidad de impedimento colateral por sentencia en el presente caso. A tales efectos, solicitó la desestimación del pleito, al palio de la Regla 10.2 de Procedimiento Civil, *infra*, toda vez que el señor Efrón no tenía una reclamación que justificara la concesión del remedio solicitado.

---

[3] La cláusula tercera del Contrato disponía:
----TERCERA: EL CESIONARIO dedicará la propiedad única y exclusivamente para estacionamiento y área verdes. Será responsabilidad de EL CESIONARIO obtener los permisos que requieran las agencias gubernamentales o municipios correspondientes para la operación de esta actividad.
Véase, *Determinaciones de Hecho* acápite 5 de la *Sentencia* de 20 de mayo de 2024, notificada al día siguiente, del pleito BY2020CV04117, entrada 102 del SUMAC.
[4] Entrada 13 del SUMAC.

El 8 de julio de 2025, el demandante presentó *Oposición a Moción de Desestimación*.[5] Arguyó que su causa de acción emanaba de la declaración de nulidad del contrato y el reconocimiento de las transferencias dinerarias injustificadas a favor de la ACT. Invocó el Artículo 1255 del derogado Código Civil de 1930, *infra*, el cual proveía la restitución de las prestaciones ante la nulidad contractual. Argumentó que la causa versaba sobre un principio del derecho contractual en el que, una vez se declara la nulidad de un contrato, procede la restitución recíproca de las prestaciones.

Con relación a la ausencia de la reconvención, el señor Efrón indicó que el TPI "dejó expresamente abierto el asunto del pago y su forma, señalando que la ACT 'muy bien podría acreditarlo a cualquier transacción de adquisición futura entre las partes, según lo vislumbraron en el esfuerzo transaccional de este caso'".[6] Específicamente el demandante manifestó que reclamar la cuantía mediante reconvención en el pleito BY2020CV04117 hubiera sido prematuro, pues su causa de acción nació con el decreto de nulidad del contrato. Por ello, rechazó la aplicación de la doctrina de cosa juzgada.

El 10 de julio de 2025, el TPI notificó la *Sentencia* apelada y desestimó con perjuicio la causa incoada.[7] Concluyó:

> **El caso BY2020CV04117 y el presente caso surgen de los mismos hechos y negocio jurídico. Planteada la nulidad del contrato objeto de litigio en ese caso, las partes estaban compelidas a solicitar del tribunal todos los remedios que surgirían de la adjudicaci[ó]n de esa controversia. Los remedios que no fueron oportunamente suplicados se tienen por renunciados.** No podemos aceptar el argumento de Efrón que su causa de acción no nació hasta que el tribuna[l] adjudicó la nulidad del contrato. Sería equivalente a determinar que no procede una acción para indemnizar daños por incumplimiento de contrato sin una sentencia previa en caso separado adjudicando la existencia del contrato o su incumplimiento. **Propiciando multiplicidad de litigios sobre el mismo asuntos [*sic*] y frust[r]ando el propósito de la Regla 11.1**

---

[5] Entrada 16 del SUMAC.

[6] *Id.*, acápite 31.

[7] Entrada 17 del SUMAC.

**al crear un mecanismo en el que se diluciden todas las controversias comunes en una sola acción.**[8] (Énfasis nuestro).

No conteste, el señor Efrón interpuso una oportuna *Moción de Reconsideración*.[9] Cuestionó la aplicación mecánica de una norma procesal sin considerar el carácter sustantivo y autónomo de la causa de acción reclamada, en alusión a la restitución de una suma pagada en virtud de un contrato declarado nulo por sentencia final y firme. Insistió en la prematuridad de la exigencia de una reconvención. Arguyó que, si bien la *Sentencia* del caso BY2020CV04117 no impuso expresamente la restitución, al declarar la nulidad del contrato, activó en pleno derecho el efecto legal del derogado Artículo 1255 del Código Civil de 1930, *infra.* En respuesta, el 29 de julio de 2025, el TPI declaró no ha lugar el petitorio.[10]

Inconforme todavía, el señor Efrón acudió ante nos el 28 de agosto de 2025 y esbozó los siguientes señalamientos de error:

PRIMERO: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA POR CONCLUIR QUE LA RECLAMACIÓN DE RESTITUCIÓN DE LO PAGADO POR EL SEÑOR EFRÓN ERA UNA RECONVENCIÓN COMPULSORIA EN EL CASO BY2020CV04117.

SEGUNDO: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL OMITIR QUE LA RESTITUCIÓN DE LAS PRESTACIONES ES CONSECUENCIA LEGAL DE LA NULIDAD DEL CONTRATO, CONFORME AL CÓDIGO CIVIL DE PUERTO RICO.

En cumplimiento de nuestra *Resolución*, la ACT presentó *Alegato en Oposición* el 29 de septiembre de 2025. Con el beneficio de ambas posturas, procedemos a resolver.

## II

### A

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, autoriza al demandado a presentar una moción de desestimación

---

[8] *Id.,* pág. 3.

[9] Entrada 18 del SUMAC.

[10] Entrada 19 del SUMAC.

debidamente fundamentada, a base de las razones en ella consignadas. En particular, en su quinto inciso, la precitada regla reconoce que la desestimación de la causa de acción procede cuando el reclamante **deja de exponer una reclamación que justifique la concesión de un remedio**. *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 396 (2022); *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1066 (2020). Acerca de este fundamento, el Tribunal Supremo ha expuesto lo siguiente:

> Al resolver una moción de desestimación por este fundamento, el tribunal tomará como ciertos todos los hechos bien alegados en la demanda, que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. Ante una moción de desestimación, las alegaciones hechas en la demanda hay que interpretarlas de forma conjunta, liberal y lo más favorable posible para la parte demandante. La demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar. Debemos considerar, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". Tampoco procede la desestimación de una demanda si es susceptible de ser enmendada. *Colón v. Lotería*, 167 DPR 625, 649 (2006).

### B

Por otra parte, primero, la Regla 37.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.4, dispone que los abogados de los litigantes preparen *un Informe Preliminar entre Abogados y Abogadas* que incluya, entre otros asuntos:

> (b) Una breve relación de los hechos pertinentes a las **reclamaciones o defensas** de las partes, [...]
>
> .    .    .    .    .    .    .    .
>
> (d) Una exposición breve de la posición de las partes con respecto a los hechos, documentos y asuntos sobre los cuales **exista controversia y la base legal que apoye tal posición**.
>
> .    .    .    .    .    .    .    .
>
> (l) Las **enmiendas a las alegaciones y los fundamentos por los cuales éstas no se presentaron con anterioridad**. (Énfasis nuestro).

En armonía, la Regla 37.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.5, especifica todo lo relacionado con la *Conferencia con Antelación*

*al Juicio*. En esta etapa de los procedimientos, se discuten los asuntos concernientes a las transacciones, la adjudicación de todas las controversias pendientes que surjan del informe, incluyendo la admisibilidad de la prueba, y el establecimiento de un plan para la celebración del juicio. *Id.* Esta regla debe ejercerse con liberalidad, de manera que se entiendan **incluidas todas las cuestiones legales y teorías factuales inherentes a las controversias que fueron definidas**. J.A. Cuevas Segarra, *Tratado de derecho procesal civil,* 2da ed., Publicaciones JTS*,* 2011, t. III, pág. 1116. Ello incluye, por supuesto, **la oportunidad para someter al tribunal posibles enmiendas a las alegaciones antes de la vista en su fondo**. *Ortiz Díaz v. R. & R. Motors Sales Corp.*, 131 DPR 829, 837 (1992). Dichas enmiendas pueden ampliar una de las causas de acción alegadas, añadir una o más causas de acción o **plantear nuevas teorías**. *Romero v. S.L.G. Reyes,* 164 DPR 721, 730 (2005); *Cruz Cora v. UCB/Trans Union P.R. Div.*, 137 DPR 917, 922 (1995).

Como se sabe, las **alegaciones** permitidas son la demanda, la **reconvención**, la demanda contra coparte, la demanda contra tercero y sus respectivas contestaciones. Regla 5.1 de Proc. Civil, 32 LPRA Ap. V, R. 5.1. Asimismo, la **solicitud de remedio** comprende la relación de hechos que demuestran el derecho a dicha reparación y su **petición**. Regla 6.1 de Proc. Civil, 32 LPRA Ap. V, R. 6.1.

Por lo tanto, en el ejercicio de su discreción, **el tribunal determinará si permitirá enmiendas a la luz de la totalidad de las circunstancias**, al amparo de la Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.1, que versa sobre las **alegaciones enmendadas**. Los criterios para demarcar el ejercicio adecuado de esa discreción son: (a) el momento en que se solicita la enmienda; (b) el impacto de la solicitud en la pronta adjudicación de la cuestión litigiosa; (c) la razón o ausencia de ella para la demora e inacción original de quien promueve la enmienda; (d) el perjuicio que ésta causaría a la otra parte; y (e) la naturaleza y los

méritos intrínsecos de la defensa que se plantea. *Romero v. S.L.G. Reyes, supra,* pág. 730. Al respecto, el alto foro ha opinado que aquellos estatutos que conceden discreción a los tribunales para autorizar enmiendas son preceptos reparadores que deben interpretarse liberalmente. *S.L.G. Sierra v. Rodríguez,* 163 DPR 738, 748 (2005).

Segundo, en cuanto a la reconvención, en el caso que la alegación reconveniente **no surja** del acto, omisión o evento que motivó la reclamación original, se trata de una **reconvención permisible**. Incluso, si la causa de acción se origina luego de contestar la demanda, el demandado puede presentar una reconvención con el permiso del tribunal. Véanse, Reglas 11.2 y 11.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 11.2 y 11.4.

Con relación a la **reconvención compulsoria**, la Regla 11.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 11.1, establece que es aquella reclamación hecha contra una parte adversa que **surge del mismo acto, omisión o evento** que motivó la reclamación de dicha parte, que no requiere la presencia de terceros no demandados. La misma debe presentarse al momento en que la parte demandante notifique su alegación. **De no formularse a tiempo, se renuncia a la aludida causa de acción**, quedando adjudicados los hechos, las reclamaciones; e **impidiendo a la parte demandada presentar una acción independiente**. *S.L.G. Font Bardón v. Mini-Warehouse,* 179 DPR 322, 333 (2010) que cita a *Neca Mortg. Corp. v. A&W Dev. S.E.,* 137 DPR 860, 867 (1995).

Acerca de esta figura jurídica, la doctrina ha pautado lo siguiente:

Una **reconvención es compulsoria** si existe una relación lógica entre la reclamación presentada en la demanda y la que es objeto de la reconvención; cuando los **hechos esenciales de ambas reclamaciones están tan vinculados que la economía judicial exige que se ventilen de conjunto**. Si las cuestiones de hecho y de derecho entre ambas son las mismas; **si la doctrina de *res judicata* impediría una acción independiente**; si ambas reclamaciones surgen de la misma prueba y si están

vinculadas lógicamente, estamos ante una reconvención compulsoria. (Énfasis nuestro). R. Hernández Colón, *Práctica jurídica de Puerto Rico, Derecho procesal civil*, 6ta ed., LexisNexis, 2017, pág. 293.

En suma, una parte que tenga una reclamación que dimane del mismo evento objeto de una demanda, deberá notificar una reconvención al momento de presentar su alegación responsiva. Ello así, porque la Regla 11.1 de Procedimiento Civil, *supra*, "obliga a la parte demandada a formular, al momento de su contestación, cualquier reclamación compulsoria, es decir, cualquier reclamación que tenga contra la parte adversa, si ésta surge de la acción, omisión o evento que motiva la reclamación de la parte demandante". *Neca Mortg. Corp. v. A&W Dev. S.E.*, *supra*, pág. 866; Cuevas Segarra, *op. cit.*, t. II, pág. 558.

Ante una omisión, **será aplicable la doctrina de cosa juzgada**, a los efectos de que será concluyente en relación con aquellos **asuntos que pudieron haber sido planteados y no lo fueron**. *Consejo Titulares v. Gómez Estremera et al.*, 184 DPR 407, 424 (2012), que cita con aprobación a *Sastre v. Cabrera*, 75 DPR 1, 3 (1953).

Ahora bien, en lo que concierne a este caso, si la parte demandada no presentó oportunamente una reconvención, pero establece nuevas alegaciones y teorías legales plausibles en el *Informe de Conferencia con Antelación al Juicio*, por ejemplo, ¿qué opción tiene?

El ordenamiento procesal civil provee para la interposición de una **reconvención omitida**. La Regla 11.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 11.5, reza:

> **Cuando la parte que presente una alegación deje de formular una reconvención** por descuido, inadvertencia o negligencia excusable, o cuando así lo requiera la justicia, **dicha parte podrá, con el permiso del tribunal, formular la reconvención mediante una enmienda**. (Énfasis nuestro).

Esta regla permite a una parte formular una reconvención a través de una enmienda cuando ha dejado de presentarla por descuido, inadvertencia o negligencia excusable. *S.L.G. Font Bardón v. Mini-*

*Warehouse, supra*, pág. 334. **Ello mitiga el efecto que produce la omisión de incluir una reconvención**. Cuando se trata de la omisión de una reconvención compulsoria, **dado que constituye cosa juzgada**, los tribunales deben ser flexibles al permitir una enmienda a estos efectos, por lo que le aplican los mismos criterios de liberalidad para determinar si una parte puede o no enmendar sus alegaciones. Cuevas Segarra, *op. cit.*, t. II, pág. 571. Es decir, cuando los tribunales vayan a determinar si conceden o no las enmiendas a las alegaciones, deben ejercer su facultad liberalmente, ya que la máxima curia ha pautado que **se pueden realizar enmiendas en etapas tan avanzadas como la conferencia con antelación al juicio**. *S.L.G. Font Bardón v. Mini-Warehouse, supra,* pág. 335. Claro está, la solicitud de enmienda debe presentarse con prontitud, ya que ésta puede ser denegada por incuria o falta de buena fe. Cuevas Segarra, *op. cit.*, t. II, pág. 571. La mejor práctica es acompañar la alegación compulsoria con la moción para solicitar el permiso para presentarla. **Si el tribunal considera que la parte adversa debe presentar una alegación responsiva, así lo ordenará y especificará el plazo para ello**. Véase, *Neca Mortg. Corp. v. A&W Dev. S.E., supra*, pág. 867.

En fin, mediante el examen integral y hermenéutico de estas reglas, se colige que las partes pueden presentar nuevas alegaciones y teorías legales en etapas tan avanzadas como la *Conferencia con Antelación al Juicio*. Por los efectos fatales que implica la omisión de una reconvención compulsoria y en aras de cumplir con la máxima de adjudicar las controversias en sus méritos, los tribunales deben conceder liberalmente las enmiendas a las alegaciones, junto a la solicitud de remedios. De esta manera, **se evita la multiplicidad de litigios al establecer un mecanismo para dilucidar todas las controversias comunes en una sola acción**. *Neca Mortg. Corp. v. A&W Dev. S.E., supra*, pág. 867, refrendado en *Consejo Titulares v. Gómez Estremera et al., supra*, pág. 424.

**C**

El ordenamiento vigente al perfeccionarse el acuerdo contractual de este caso establecía que un contrato existía al concurrir el consentimiento de los contratantes, un objeto cierto y una causa de la obligación que se establezca. Art. 1213 del Cód. Civil de 1930, 31 LPRA ant. sec. 3391. Sin embargo, en ciertas ocasiones, como la de autos, se presentan situaciones que demuestran que el contrato que hasta ese momento se presumía válido, en realidad, es nulo. La nulidad absoluta implica que el contrato no produce ningún efecto. *Col. Int'l Sek P.R., Inc. v. Escribá*, 135 DPR 647, 666 (1994).

El derogado Artículo 1255 del Código Civil de 1930, 31 LPRA ant. sec. 3514, disponía que, "[d]eclarada la **nulidad** de una obligación, los contratantes **deben restituirse recíprocamente** las cosas que hubiesen sido materia del contrato, con sus frutos, y el precio con los intereses, **salvo lo que se dispone en los artículos siguientes**". (Énfasis nuestro). A esta disposición le sucedían los Artículos 1256 al 1266, 31 LPRA ants. sec. 3215-3525, que establecían las instancias en las que no procedía la restitución. Éstas son: incapacidad (Art. 1256), causa u objeto ilícito (Art. 1257), causa torpe que no constituye delito o falta e imputable a uno o a ambos contratantes (Art. 1258), la pérdida de la cosa (Arts. 1259 y 1266), la falta de restitución de uno de los contratantes (Art. 1260) y la extinción de la acción de nulidad por confirmación (Arts. 1261-1265).[11]

Al respecto, el Tribunal Supremo ha resuelto que, declarada la nulidad del contrato, las partes contratantes quedaban condenadas a la restauración del estado primitivo anterior de las cosas, mediante la

---

[11] Actualmente, la norma de la restitución se estatuye en el Artículo 346, 31 LPRA sec. 6316, el cual dispone como sigue:

La sentencia de invalidez de un negocio jurídico obliga a las partes a restituir, con sus frutos y productos, lo recibido en virtud del negocio jurídico. La restitución se rige por las disposiciones relativas a las relaciones reales de buena o de mala fe, según sea el caso.

Si el negocio jurídico anulable se anula por mediar incapacidad para obrar en su otorgante, el incapaz que actuó sin dolo no está obligado a restituir lo recibido sino en la medida en que se enriqueció por el negocio jurídico anulado.

restitución de las prestaciones objeto del contrato, <u>salvo cuando la nulidad se deba a causa torpe o ilícita, en cuyo caso prevalece como criterio el de culpa o torpeza atribuible a las partes</u>. *Bosques v. Echevarría*, 162 DPR 830, 836-837 (2004); *Sánchez Rodríguez v. López Jiménez*, 116 DPR 172 (1985). La doctrina ha apuntado que las restituciones "exigen que previamente conste la declaración de nulidad del contrato en cuya virtud fueron realizadas". J. Puig Brutau, *Fundamentos de derecho civil, Doctrina general del contrato*, 3ra. ed., Bosch, 1988, t. II vol. I, pág. 297. Sobre este extremo, el tratadista Puig Brutau ha comentado que estos preceptos "parecen pensados exclusivamente para los contratos de tracto único". *Id.*, pág. 298. "**En los de tracto sucesivo (arrendamiento, sociedad, etc.) ha de resolverse si los efectos de la invalidez han de producirse solamente hacia el futuro (*ex nunc*), respetando los actos anteriores ya consumados, o si han de tener efecto retroactivo (*ex tunc*)**". (Énfasis nuestro). *Id.*

En ese sentido, Puig Brutau aludió al siguiente dictamen español:

> En el caso de la sentencia de 17 mayo 1973 (Aranzadi, núm. 2338), el recurrente pretendía que las cantidades percibidas por una comunidad de propietarios como precio del arrendamiento, le fueran restituidas con el incremento del interés legal, por aplicación del artículo 1303 del C. c.[12] El Tribunal Supremo, aparte de señalar que se trataba de una cuestión que no había sido planteada en la instancia, declaró que, en todo caso, "**habría que tener en cuenta la alegación que contra ella pudiera oponer la comunidad, por haber estado privada de una porción de espacio** de un elemento común, y por el lucro que torticeramente hubiera venido obteniendo el ocupante mientras duró su ocupación indebida". (Énfasis nuestro). Puig Brutau, *op. cit.*, pág. 298.

---

[12] Aclaramos que el Artículo 1303 del Código Civil español es similar al derogado Artículo 1255 del Código Civil de 1930, *supra*. Así dispone: "Declarada la nulidad de una obligación, los contratantes deben restituirse recíprocamente las cosas que hubiesen sido materia del contrato, con sus frutos, y el precio con los intereses, salvo lo que se dispone en los artículos siguientes". Las disposiciones del Artículo 1304 al 1314 del Código Civil español reúnen instancias similares a las estatuidas en el derogado ordenamiento civil de Puerto Rico.

**III**

**(i)**

En la *Apelación* presente, en el primer error, el señor Efrón alega que el TPI incidió al desestimar la *Demanda* bajo el fundamento de que la restitución estaba atada a una reconvención compulsoria en el caso BY2020CV04117. Aduce en el segundo error que el TPI omitió que la restitución de los $110,000.00 solicitada surgió como consecuencia de la nulidad del contrato, de conformidad con el ordenamiento civil.

Al argumentar, el apelante plantea que la reconvención a su haber era de naturaleza *permisible*, no compulsoria, por lo que no se descartaba una multiplicidad de pleitos. A su vez, reitera que el derecho a la cuantía reclamada no había advenido a la vida jurídica, pues no se había decretado la nulidad del contrato. Arguye que, una vez se declaró nulo el contrato, surgió el derecho a la restitución, *como una causa de acción subsiguiente* e *independiente*. Afirma que la obligación legal es impuesta por el ordenamiento, al palio del entonces vigente Artículo 1255 del Código Civil de 1930, *supra*, y no deriva de un remedio contractual. Añade también que la permanencia de esa suma en poder de la ACT no sólo produce un resultado injusto, sino que otorga validez a un contrato inexistente.

De otro lado, en su *Alegato en Oposición*, la ACT apunta a que el señor Efrón <u>admitió que los pagos emitidos tenían el propósito de reservar el predio, durante el tiempo que emitió los cánones arrendatarios</u>, por lo que no lo destinó como estacionamiento conforme lo pactado por voluntad propia. Cuestiona también que el señor Efrón reclame una restitución, mientras ignora la naturaleza recíproca de las prestaciones. Manifiesta que la ACT no puede ser resarcida por las ganancias que pudo haber generado si el apelante no hubiera estado reservándose para sí el predio.

Sostiene además que, si bien el dictamen acogió la alegación de nulidad contractual esbozada por primera vez en el *Informe*, el TPI no se

pronunció sobre los pagos efectuados por el apelante, debido a su omisión de presentar una reconvención compulsoria. Es decir, la ACT enuncia que la *Sentencia* del caso BY2020CV04117 no la condenó a retribuir al señor Efrón la suma pagada, ya que el apelante no reconvino, por lo que éste no tiene derecho a recobro alguno. Añade que el pleito tampoco versaba sobre una sentencia declaratoria.

Por igual, la ACT rechaza que la reconvención fuera una permisible, sino de naturaleza compulsoria, ya que la reclamación sí surgía de los mismos eventos. Expresa que el apelante pretende remediar errores procesales. A ese fin, concluye que el TPI no erró al desestimar con perjuicio la *Demanda* en su contra.

### (ii)

Como cuestión de umbral, en torno a este predio arrendado en Dorado, las partes han enfrentado una trilogía de litigios. Surge del expediente el **primer caso**, *Autoridad de Carreteras y Transportación de Puerto Rico v. David Efrón*, DPE2018-0003, sobre desahucio por falta de pago. De los autos se desprende que, en esa ocasión, **el señor Efrón sí reclamó mediante una reconvención la suma de $110,000.00**. No obstante, el caso fue desistido sin perjuicio por ambas partes.[13]

Al cabo de dos años, en el **segundo litigio**, *Autoridad de Carreteras y Transportación de Puerto Rico v. David Efrón*, BY2020CV04117, sobre cobro de dinero y enriquecimiento injusto,[14] la ACT alegó que el señor Efrón continuaba en posesión y control del predio de Dorado, independientemente de que no lo hubiere utilizado ni explotado. Reclamó $130,000.00 por los pagos de los cánones de arrendamiento que desde abril de 2010 no habían sido satisfechos.

---

[13] Véase, nota al calce 1 de la *Sentencia* del pleito BY2020CV04117; entrada 102 del SUMAC.

[14] Véase, Anejo 1 del *Alegato en Oposición. Demanda* del pleito BY2020CV04117; entrada 1 del SUMAC. La causa de enriquecimiento injusto se alegó porque el Contrato nunca fue registrado en la Oficina del Contralor. Véase, *Certificación* de 15 de mayo de 2019 del pleito BY2020CV04117; entrada 91 del SUMAC. La ACT adujo también que la privación del predio le impidió la explotación legítima.

En su alegación responsiva,[15] el señor Efrón expresó que "nunca ocupó ni tomó posesión de la propiedad en cuestión. Sencillamente efectuaba pago para en efecto reservar el predio, lo cual descontinuó en mayo [*sic*] del año 2010 luego de negársele la opción de compra discutida entre las partes y lo cual fue discutido a saciedad en el desestimado caso DPE2018-0003".[16] (Subrayado suplido). Añadió que la propiedad siempre tuvo acceso libre a la ACT, ya que no estaba cercada ni con ningún tipo de signo aparente que sugiriera su posesión ni control. Entre sus defensas afirmativas, **invocó cosa juzgada e impedimento colateral, en atención al litigio DPE2018-0003**.

Así las cosas, surge del expediente del caso BY2020CV04117 que las partes intentaron infructuosamente transigir sus diferencias.[17] El apelante propuso comprar la propiedad por el precio de tasación de 2001 y atribuir un crédito por las rentas pagadas. La apelada no aceptó la oferta por no existir documentación que avalara la acreditación y porque, dada la quiebra del Gobierno, la autorización correspondía a la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico. Por igual, la deuda reclamada de $113,000.00 fue otro punto de *impasse* entre los contendientes. Cabe destacar que, en esa ocasión, **la representación legal del señor Efrón apuntó que no existía una reconvención**.

Así las cosas, el 14 de octubre de 2022, las partes litigantes presentaron el *Informe de Conferencia con Antelación al Juicio* (*Informe*).[18] El apelante expuso que su testimonio abordaría el entendido sobre que se le iba vender la propiedad cuando estuviese disponible para la venta. Esto es, la "única razón de ser era separarla y/o sacarla del mercado para una venta futura".[19] En resumen, el señor Efrón deseaba comprar

---

[15] Véase, Anejo 2 del *Alegato en Oposición. Contestación a la Demanda* del pleito BY2020CV04117; entrada 9 del SUMAC.

[16] *Id.*, acápite 7.

[17] *Minuta* de 18 de noviembre de 2021 del pleito BY2020CV04117; entrada 34 del SUMAC.

[18] Véase, Anejo 3 del *Alegato en Oposición. Informe de Conferencia con Antelación al Juicio* del pleito BY2020CV04117; entrada 63 del SUMAC.

[19] *Id.*, pág. 9

la propiedad; y por ello, pagó el monto acordado en el Contrato, aunque según dijo nunca ejercitó actos posesorios sobre la propiedad ni utilizó el predio para los propósitos contratados.

En el documento conjunto, además, por primera vez, el apelante esbozó la teoría legal de la nulidad del Contrato, fundado en que el acuerdo adolecía de un término fijo. Así, estableció las tres controversias siguientes: (1) Si el Contrato es nulo. (2) En caso de que no sea nulo el Contrato, sí aplica la cláusula decimonovena,[20] por lo que la ACT sólo podía reclamar el monto de tres meses a la fianza que se exigió al momento de la contratación entre las partes. Así, pues, se alegó la nulidad contractual y, en la alternativa, se invocó una condición resolutoria que finiquitaría la controversia y, al igual que la nulidad, liberaría al apelante de pagar la cuantía reclamada. Además, el señor Efrón planteó que la ACT se enriqueció injustamente, en atención a la renta satisfecha por un terreno baldío.

En cuanto a la ACT, plasmó las siguientes cuestiones a resolver: (1) Si el demandado realizó algún acto de entrega de la propiedad. (2) Si se presume que el demandado continuó en posesión de la propiedad. (3) En la afirmativa, el justo valor en el mercado por la continuada posesión de la propiedad. (4) La cantidad de los pagos parciales realizados por el demandado posterior al vencimiento del Contrato. (5) Si el demandado se enriqueció injustamente a costa de la demandante, por la continuada posesión de la propiedad objeto del caso, sin el pago de su justo valor en el mercado por dicha posesión. (6) La cantidad adeudada por el

---

[20] Así rezaba la aludida cláusula:

----DECIMA NOVENA: Vencidos y no pagados los cánones de tres (3) mensualidades se dará por terminados este Permiso de Entrada y Ocupación, todo interés y derecho en lo establecido. El presente Permiso de Entrada y Ocupación se extinguirá en la misma forma y con el mismo rigor y tan eficazmente como si la fecha del incumplimiento fuere la expiración del término pactados, sin perjuicio del derecho de la AUTORIDAD a demandar judicialmente para el pago de la obligación.

Véase, *Determinaciones de Hecho*, acápite 6 de la *Sentencia* del pleito BY2020CV04117; entrada 102 del SUMAC.

demandado a la demandante por el uso y posesión de la propiedad objeto de este caso.

Finalmente, el 27 de octubre de 2022, el TPI aprobó el *Informe*, según presentado.[21] Igualmente, los litigantes continuaron infructuosamente conversaciones transaccionales.[22]

El 22 de febrero de 2024, se celebró la vista en su fondo.[23] En el procedimiento, el TPI declaró con lugar la petición desestimatoria perentoria (*nonsuit*) del señor Efrón. En la *Sentencia* notificada el 21 de mayo de 2024,[24] el TPI decretó la nulidad del Contrato por falta de un término de vigencia. Enunció que el señor Efrón tuvo posesión natural de la propiedad arrendada, a razón de los cánones pagados, "<u>con el fin de reservar el derecho de comprar dichos predios</u>, pero nunca ocupó dicha propiedad".[25] (Subrayado suplido). Además, en lo que nos atañe, si bien el TPI aseveró que la "ACT podría estar en la situación de tener que devolver al [señor] Efrón el dinero pagado durante el tiempo que alegadamente [*sic*] estuvo arrendando", indicó:

> **No hacemos pronunciamiento adicional alguno con relación a los dineros pagados por una propiedad que nunca se ocupó, pues en este caso no se presentó reconvención al respecto**. Sin embargo, la Autoridad demandante muy bien podría acreditarlo a cualquier transacción de adquisición futura entre las partes, según lo vislumbraron en el esfuerzo transaccional de este caso.[26] (Énfasis nuestro).

Al año siguiente de dictada la *Sentencia*, se produjo el **tercer pleito** del título, *David Efrón v. Autoridad de Carreteras y Transportación de Puerto Rico,* SJ2025CV01488, mediante el cual el apelante reclamó el monto pagado a la ACT, por concepto de los cánones de arrendamiento más los intereses, basado en el decreto de nulidad del Contrato. No

---

[21] *Minuta* de 27 de octubre de 2022 del pleito BY2020CV04117; entrada 69 del SUMAC.
[22] *Minuta* de 21 de febrero de 2023 del pleito BY2020CV04117; entrada 74 del SUMAC
[23] *Minuta* de 24 de febrero de 2024 del pleito BY2020CV04117; entrada 96 del SUMAC.
[24] *Sentencia* del pleito BY2020CV04117; entrada 102 del SUMAC.
[25] Véase, *Determinaciones de Hecho*, acápite 12 de la *Sentencia del pleito* BY2020CV04117; entrada 102 del SUMAC.
[26] Véase, *Conclusiones de Derecho y Aplicación*, pág. 5 de la *Sentencia* del pleito BY2020CV04117; entrada 102 del SUMAC.

obstante, el TPI acogió la *Moción de Desestimación* incoada por la ACT que esgrimió el impedimento de la reclamación. En consecuencia, desestimó con perjuicio la *Demanda,* basado en la Regla 10.2 de Procedimiento Civil, *supra,* toda vez que el señor Efrón no reconvino en el pleito anterior, como debió hacerlo de manera compulsoria, por lo que no tiene derecho al remedio renunciado.

### (iii)

Anticipamos que, luego de examinar el tracto del caso BY2020CV04117, en armonía con los preceptos sustantivos y procesales, somos del criterio que, en el caso del epígrafe, el señor Efrón no tiene derecho a solicitar una restitución, la cual nunca fue peticionada, ni dirimida en juicio, ni concedida por el TPI. Contrario a lo alegado por el apelante, el TPI no dejó abierto "el asunto del pago y su forma" cuando aludió al supuesto crédito de una futura transacción de compraventa. El TPI fue palmariamente claro al justipreciar que la omisión del apelante al no interponer una reconvención compulsoria impidió un pronunciamiento acerca del monto dinerario que aquí se pretende reclamar. Ello así, porque de conformidad con el ordenamiento legal, la restitución recíproca de las prestaciones por causa de nulidad contractual no opera de manera automática ni uniforme en todos los casos, ya que el Código Civil de 1930 consignaba múltiples instancias en que el remedio no procedía para una o para ambas partes contratantes. Por tanto, si el apelante no suplicó el remedio restitutorio en el pleito BY2020CV04117, lo renunció.

Además, el descuido o estrategia del apelante de no reconvenir en el pleito anterior y la pretensión de cobrar *sua sponte* en este litigio la suma dineraria pagada para reservar un predio público tendría el resultado de colocar a la ACT en un estado de indefensión, al reclamársele una cuantía no solicitada por el apelante ni concedida a éste en la *Sentencia* del pleito BY2020CV04117 y contra la cual la apelada no tuvo oportunidad de entablar su oposición, basada en el

propio derecho sustantivo vigente, lo que infringiría su debido proceso de ley. Recuérdese también que la *Sentencia* del caso BY2020CV04117 no fue objeto de impugnación mediante una solicitud de reconsideración y mucho menos a través de una apelación, adviniendo final y firme. Veamos.

Según esbozamos, una reconvención permisible es aquella alegación reconveniente que **no** surge del acto, omisión o evento que motivó la reclamación original. *A contrario sensu,* la reconvención compulsoria es una alegación que **sí** surge del acto, de la omisión o del evento que motivó la reclamación de la parte adversa y no requiere la presencia de terceros para su adjudicación.

En la presente causa, entre la *Demanda* del caso BY2020CV04117 por cobro de dinero derivado del Contrato nulo y la reclamación de restitución a base de dicha nulidad del caso del epígrafe existe una relación lógica. Por un lado, la ACT solicitó el pago de cánones de arrendamiento por virtud de un Contrato nulo; mientras que el apelante, en este pleito, reclamó la restitución de dichos pagos, a pesar de no haberlo planteado en el litigio anterior. Debido a la evidente vinculación de los hechos esenciales de ambas causas de acción, la economía judicial exige que se ventilen en conjunto. Igualmente, las cuestiones evidenciarias entre la reclamación de cobro de dinero de la ACT por incumplimiento de contrato y la petición de restitución basado en el decreto de nulidad del Contrato son las mismas precisamente porque surgen del mismo acto.

Por consiguiente, no cabe hablar de una reconvención permisible como plantea el señor Efrón. Al contrario, al éste preterir la interposición oportuna de una reconvención compulsoria, por analogía, se aplica la doctrina de cosa juzgada. El señor Efrón está impedido de tramitar otro pleito, en relación con aquellos asuntos que pudo y debió haber planteado en el caso BY2020CV04117 y no lo hizo. Es forzoso concluir que la restitución de la que incluso se desconoce si hubiera tenido o no

derecho a ella y que ni siquiera fue concedida mediante la *Sentencia* en el caso BY2020CV04117 fue renunciada y no puede reclamarse en la causa de autos.

Si bien el Artículo 1255 del Código Civil de 1930, *supra,* disponía para la restitución en casos de nulidad contractual, como adelantamos, la letra de la disposición legal establecía claramente que el remedio no operaba en la totalidad de los casos de manera automática ni uniforme. La sucesión de una decena de artículos explicaba las salvedades. Por eso, opinamos que, en el caso BY2020CV04117, una vez el señor Efrón estableció por primera vez en el *Informe* la alegación de nulidad contractual —donde de hecho no aludió en absoluto al remedio restitutorio del Artículo 1255— debió solicitar permiso al TPI e interponer una reconvención compulsoria, al amparo de la Regla 11.5 de Procedimiento Civil, *supra.* En esta alegación, hasta esa etapa omitida por descuido, inadvertencia o negligencia excusable, además, el apelante debió reclamar la restitución y el pago de intereses. En ese supuesto, la ACT hubiera estado en posición de allanarse o, debido a las propias admisiones del apelante, esgrimir su oposición y alegar la improcedencia de la restitución; por ejemplo, por la imposibilidad de ser restituida recíprocamente o al alegar una causa falsa, torpe o ilícita.[27] Nótese que el apelante reconoció que la causa verdadera del Contrato fue reservar el predio de titularidad pública para, en la eventualidad, realizar una compraventa privada; no para utilizarlo como estacionamiento, según dispuso el Contrato.[28]

---

[27] Una causa es *ilícita* cuando se opone a las leyes y una causa es *torpe* cuando contraviene la moral y las buenas costumbres. *Rosario Rosado v. Pagán Santiago,* 196 DPR 180, 188-189 (2016); *Col. Int'l Sek P.R., Inc., v. Escribá,* 135 DPR 647, 665 (1994). En cuanto a la causa *falsa,* su expresión da lugar a la nulidad, aunque el ordenamiento no descartaba reconocerle validez a un contrato que poseyera una causa falsa o fingida, siempre y cuando encubra otra verdadera y lícita. *Delgado Rodríguez v. Rivera Siverio,* 173 DPR 150, 160-161 (2008).

[28] A modo de ejemplo, el Artículo 1258 del Código Civil de 1930, *supra,* establecía efectos distintos cuando la causa torpe del contrato le era imputable a uno o a ambos contratantes. En esas circunstancias, únicamente el extraño a la causa torpe podía reclamar lo que hubiera dado. 31 LPRA ant. sec. 3517.

Puntualizamos que la etapa avanzada de los procedimientos no era óbice para que el señor Efrón solicitara permiso al TPI para instar una reconvención compulsoria y peticionara los remedios que entendiera tenía derecho a percibir. Tanto las normas procesales como su jurisprudencia interpretativa proveen para ello. Ese simple trámite hubiera permitido que se dilucidaran todas las controversias en sus méritos en una sola acción y se evitaba precisamente la multiplicidad de litigios, lo que es exógeno a la solución justa, rápida y económica de todo procedimiento judicial. Así, además de adjudicar la nulidad contractual alegada en el *Informe* por el apelante, el TPI hubiera podido dirimir también las posibles objeciones de la ACT, de manera que se pudiera concluir si operaba o no la restitución recíproca. Incluso, el TPI podía determinar si los efectos de la nulidad habrían de producirse prospectivamente (*ex nunc*) o retroactivamente (*ex tunc*), toda vez que el Contrato de arrendamiento nulo era de tracto sucesivo.

Al igual que el derecho a resarcimiento en acciones extracontractuales, como la restitución en causas de nulidad contractual, según estatuidas, son potenciales consecuencias remediales que se tienen que solicitar y demostrar en el mismo pleito, no en litigios subsiguientes como alega el apelante, aun cuando en ambos casos reste determinar la negligencia o la nulidad, respectivamente. Adoptar la postura del señor Efrón tendría el efecto absurdo de bifurcar infinidad de causas de acción. Esto es, si un demandante presenta un caso de nulidad contractual, tendría que presentar dos demandas: la primera para que se decrete la nulidad contractual, sin solicitar los remedios de conformidad con la Regla. 6.1 de Procedimiento Civil, *supra*; y de prevalecer la nulidad, incoar un segundo procedimiento independiente para peticionar y dilucidar la procedencia de la restitución. Este orden no sólo es ajeno a nuestras normas procesales, sino que tiene el efecto de duplicar los trabajos en las salas de los tribunales e imponer una carga onerosa a los reclamantes. En el caso que sea la parte demandada

quien interponga la alegación de nulidad, convertiría en inoperantes las distintas reconvenciones permitidas en el trámite de los casos.

Según mencionamos, la Regla 10.2 de Procedimiento Civil, *supra*, nos mandata a adoptar los hechos bien alegados de la reclamación civil que atendemos, así como conferir una interpretación liberal y favorable al demandante. En observancia a esos postulados y en virtud de los fundamentos esbozados, resolvemos que el TPI no incidió al desestimar con perjuicio la *Demanda* de autos al ésta dejar de exponer una reclamación que justificara la concesión de un remedio, el cual fue renunciado por el señor Efrón, ante la omisión de interponer oportunamente una reconvención compulsoria en el litigio BY2020CV04117.

**IV**

Por las razones expuestas, confirmamos la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones